553 F.Supp. 787 (1982)
Richard B. MANECKE and Julia W. Manecke, his wife, individually and Lauren Manecke, an adult dependent child, by and through her next friends, parents and natural guardians, Richard B. Manecke and Julia W. Manecke, Plaintiffs,
v.
SCHOOL BOARD OF PINELLAS COUNTY, FLORIDA, a public school district in the state system of public education, Defendant.
No. 81-501-Civ-T-GC.
United States District Court, M.D. Florida, Tampa Division.
December 21, 1982.
Gardiner Beckett, St. Petersburg, Fla., for plaintiffs.
B. Edwin Johnson, Clearwater, Fla., for defendant.

MEMORANDUM OF DECISION
GEORGE C. CARR, District Judge.
This cause comes before the Court upon the defendant's motion to dismiss. The *788 plaintiffs, the parents of an adult, mentally handicapped daughter, bring this action for reimbursement of tuition expenditures and other damages. The complaint alleges violations of the Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq. (Count I) and 42 U.S.C. § 1983 (Count II). The plaintiffs specifically note that the action is not brought under the Education for All Handicapped Children Act (EAHCA) 20 U.S.C. § 1401 et seq.
The plaintiffs' daughter, Lauren, was a day student in the defendant's educational system in 1979. Believing that Lauren would benefit more from a residential educational program, the plaintiffs in December, 1979 requested by letter that the defendant conduct an impartial hearing to determine whether Lauren would be more appropriately placed in a private residential program.[1] Such a hearing is required by the procedural safeguards contained in the EAHCA.[2]
The defendant responded to the plaintiffs' request with a letter on January 4, 1980 which notified the plaintiffs that the school board's lawyer would arrange for a hearing in the near future. The regulations implementing the EAHCA specify that the school board must make a decision on requests for residential placement within forty-five days of the request for a hearing. Notwithstanding these regulations, the school board did not contact the plaintiffs again until July 21, 1980. In the interim however, the plaintiffs made no attempt to expedite a hearing or re-contact the school board. Instead, on March 27, 1980, the plaintiffs unilaterally and without notice to the defendant withdrew Lauren from her Pinellas County school and enrolled her in a private residential program.
The plaintiffs' first count brought pursuant to 29 U.S.C. § 701 et seq. seeks reimbursement of their expenditures for Lauren's tuition. The second count of the complaint seeks damages under 42 U.S.C. § 1983 for the defendant's allegedly willful violation of the plaintiffs' and Lauren's constitutional and statutory rights. As the defendant seeks dismissal of both counts on different theories, the Court will address each of the defendant's contentions in turn.
With regard to Count I of the complaint, the defendant basically avers that the Rehabilitation Act does not provide for private damage actions. Furthermore, the defendant argues that even if the Act did provide a remedy, the failure of the plaintiffs to pursue a hearing beyond their initial letter, waives any claim to such damages. Addressing this latter claim, the Court notes that waiver is an affirmative defense and involves factual determinations. Thus, under the strict standard of Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), the defendants waiver argument is an inappropriate basis for a dismissal under Rule 12 Fed.R.Civ.P.
The defendant's argument that private money damages are not recoverable under the Rehabilitation Act presents a more problematic determination for the Court. The Courts confronting the issue have reached conflicting decisions. See e.g. Miener v. State of Mo., 673 F.2d 969 (8th Cir.1982) (Section 504 provides for private damages); Ruth Anne M. v. Alvin Indep. Sch. Dist., 532 F.Supp. 460 (S.D.Tex.1982) (no damage action under Section 504). The Supreme Court has not ruled on the issue and the Fifth Circuit has expressly reserved judgment. See Camenisch v. University of Texas, 616 F.2d 127, 132 n. 10 (5th Cir.1980), vacated on other grounds 451 U.S. 390, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981).
Those courts who have found a private damage remedy in Section 504 have basically reasoned that where a statute provides a right and that right is infringed, the courts *789 may use any available remedy to make good the wrong. Miener supra, citing Bell v. Hood, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946). The Miener Court concluded that administrative remedies and prospective relief, are of little help to the individual plaintiff and thus ruled that private damages are recoverable for violations of Section 504.
However, this broad power of the federal courts to fashion remedies is limited by the principal that "where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it." Transamerica Mortgage Advisors, Inc. v. Lewis, 444 U.S. 11, 19, 100 S.Ct. 242, 247, 62 L.Ed.2d 146 (1979). The regulations enforcing Section 504 specifically provide for the termination of federal funds to those institutions which are found guilty of discrimination against the handicapped. 45 C.F.R. § 80.8. Thus, there is an explicit administrative remedy for violations of the Rehabilitation Act. Although as noted by the Miener Court, while this remedy is doubtless of little solace to individual plaintiffs, it does serve the statute's purpose of inhibiting institutionalized discrimination against the handicapped. Furthermore, responding to the lack of an individual remedy, the Fifth and other Circuits have concluded that individuals do have a right to either injunctive or declaratory relief under the Act. See Camenisch supra.
Ultimately, the resolution of whether Section 504 provides for private damages is a question of legislative intent. Cannon v. Univ. of Chicago, 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979). Therefore, those Courts which have concluded that Section 504 does not provide for damage relief have supported their decisions with an analysis of Congress' intent in enacting the statute. These Courts note that it would be inconsistent for Congress to have provided for the withdrawal of federal funding while at the same time providing for private damages. Ruth Anne M. supra at 473. The purpose of the Act was to promote and expand opportunities in the public and private sectors for handicapped individuals. See 29 U.S.C. § 701(8). The Act basically seeks to provide nondiscriminatory treatment and equal opportunity for the handicapped. A private damage remedy would expose recipients of federal funds to a potentially massive financial liability. The risk of litigation may limit the institutional or private acceptance of federal funds and hence actually restrict opportunities for the handicapped. Loughran v. Flanders, 470 F.Supp. 110 (D.Conn.1979). Thus, the administrative mechanisms which seek to enforce compliance and promote acceptance of the Act would be at cross purposes with private litigants who seek the award of damages.
However, the legislative history regarding the kinds of remedies that Congress intended to be available under Section 504 is scant. The Courts can basically draw whatever inferences they desire from the cryptic legislative history. Cf. Gregg B. v. Board of Ed. of Lawrence Sch. Dist., 535 F.Supp. 1333 (E.D.N.Y.1982). In Gregg, the Court concluded that nothing in the legislative history of the Rehabilitation Act would suggest that remedies under the Act were to be limited to injunctive and declaratory relief. Id. at 1339 (citations omitted). The Gregg Court then noted that Section 504 was modeled after Title VI of the Civil Rights Act of 1964. Title VI bars racial discrimination by the recipients of federal funds and like Section 504 does not expressly provide any remedies except for the termination of funds to those recipients who violate the act. See Davis v. United Air Lines, Inc., 662 F.2d 120 (2d Cir.1981). Thus, as the Second Circuit ruled that private damages are available under Title VI,[3] the Gregg Court concluded that private damages are also available under Section 504.
Applying the Gregg rationale to the instant case, the Court notes that the Fifth *790 Circuit has determined that there is no private right of damages under Title VI. Drayden v. Needville Indep. Sch. Dist., 642 F.2d 129 (5th Cir.1981). Thus, following Gregg and Drayden, this Court concludes that there is no private right of damage under Section 504 in this Circuit.
Compelling the Court's decision is its reluctance in the absence of any clear-cut judicial or legislative guidance to create a private right of action under a statute which one Court has termed "simply a prohibition of certain conduct on the part of recipients of federal financial assistance." Monahan v. State of Neb., 687 F.2d 1164 (8th Cir.1982). The Rehabilitation Act is designed to control institutional behavior. Such behavior can be controlled effectively and without the dangers inherent in creating private damage remedies by the existing mechanisms for the enforcement of Section 504  the withdrawal of federal funds and the right to injunctive and declaratory relief. Consequently, the Court concludes that Section 504 does not provide an action for private damages. Accordingly, the Court will GRANT the defendant's motion as to Count I.[4]

COUNT II
Besides their claim for tuition reimbursement under the Rehabilitation Act, the plaintiffs seek damages pursuant to 42 U.S.C. § 1983. The Supreme Court in Maine v. Thiboutot, 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980), broadly stated that an action under Section 1983 exists to enforce all federally created statutory and constitutional rights. However, the Court has been quick to limit Thiboutot by holding that where the substantive federal statute provides an exclusive remedy for violations, additional remedies under Section 1983 are not applicable. Pennhurst State School & Hospital v. Halderman, 451 U.S. 1, *791 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981). Whether an act contains remedies which are sufficiently comprehensive to preclude Section 1983 actions is a matter of legislative intent. Middlesex County Sewerage Authority v. National Sea Clammers Assc., 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981).
In view of the Court's previous conclusions regarding Congress' intent in enacting Section 504, the issue now before the Court is whether the rights created by Section 504 can be asserted within the remedial framework of Section 1983. The Court has determined that Section 504 only provides for equitable relief to private litigants. To conclude that damage claims are allowable under Section 1983 would circumvent the Court's ruling and the Court's determinations of Congress' intent upon which that ruling is based. Therefore, the Court holds that the plaintiffs can not assert a claim for damage under Section 1983. Accordingly, the defendant's motion as to Count II will be GRANTED. See Ruth Anne M. supra.
NOTES
[1] The defendant does not operate a residential school program for the mentally handicapped. The defendant's responsibility under the EAHCA to provide a residential school for students in need of one may be met either in a public facility or a private facility at public expense. See 45 C.F.R. § 84.22(c)(3).
[2] It must be emphasized that plaintiff does not bring this action under the EAHCA. For a more detailed discussion of the relationship between the Rehabilitation Act and the EAHCA, see note 4 infra.
[3] See Guardians Association of New York City Police Dept., Inc. v. Civil Service Commission of New York, 633 F.2d 232, (2d Cir.1980); cert. granted, 454 U.S. 1140, 102 S.Ct. 997, 71 L.Ed.2d 291 (1982).
[4] Although ruling as a matter of law that private damages are not recoverable under Section 504, the Court notes that it is not clear that the plaintiffs' complaint even alleges an action under the Rehabilitation Act. The gravamen of the plaintiffs' complaint is that Lauren was denied placement in a residential facility. Specifically, the complaint alleges the denial of an impartial hearing to determine Lauren's residential placement. However, there are no allegations in the complaint that the defendant failed to evaluate Lauren's educational capacity, that she was denied an education by the defendant or that she was in any way discriminated against because of her handicap.

The plaintiffs bring this claim under the Rehabilitation Act but then extensively cite the EAHCA and its accompanying regulations. However, the Rehabilitation Act and the EAHCA are entirely different statutes with different purposes and procedural requirements. The EAHCA imposes an affirmative duty on the recipients of federal funds to provide a free, appropriate education for handicapped children. See Board of Ed. v. Rowley, ___ U.S. ___, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982). In contrast, the Rehabilitation Act imposes only a negative duty on all recipients of federal funds  the duty not to discriminate. See Southeastern Community College v. Davis, 442 U.S. 397, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979). See also Monahan v. State of Neb., 687 F.2d 1164 (8th Cir.1982) (bad faith must be alleged in Section 504 complaints). The Supreme Court in Davis suggested that any regulation promulgated to enforce Section 504 which required affirmative action on the part of the recipient of federal funds was beyond the authority contained in the Act. 442 U.S. at 411-12, 99 S.Ct. at 2369-70.
In their complaint, the plaintiffs attempt to annex the specific provisions of the EAHCA by noting that a regulation of the Rehabilitation Act provides that certain procedural safeguards deemed to be required by the Rehabilitation Act may be met by complying with the procedures outlined in the EAHCA. 45 C.F.R. § 84.36. However, this regulation is in contravention of Davis' holding that Section 504 does not require any affirmative obligation. As such, this regulation is beyond the purview of Section 504.
The plaintiffs endeavor to avoid the exhaustion requirements of the EAHCA by not pleading that statute. The plaintiffs then attack the defendant for not meeting the strict procedural requirements of the EAHCA by arguing that Section 504 requires compliance with the EAHCA. In this manner the plaintiffs seek the benefits of the EAHCA without having fulfilled its preconditions. However, the plaintiffs can not have it both ways. Those regulations which attempt to require affirmative duties under Section 504, like 45 C.F.R. § 84.36 are invalid. Section 504 simply does not mandate the procedural safeguards that are required by the EAHCA. Thus, while the plaintiffs' complaint may allege a cause of action for failure to provide the process due under the EAHCA, the complaint does not allege discrimination as required under Section 504.